IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Charles Edward McClinton,     )
     )     Civil Action No. 8:10-cv-2577-MBS-JDA
     Plaintiff,     )
     )     **REPORT AND RECOMMENDATION**
     )     **OF MAGISTRATE JUDGE**
     vs.     )
     )
Michael J. Astrue,     )
Commissioner of Social Security,     )
     )
     Defendant.     )

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff, proceeding pro se, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

In December 2006, Plaintiff protectively filed applications for DIB and SSI, alleging an onset of disability date of October 29, 2006. [R. 112–13 (DIB application); *see* R. 58

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

(initial denial of SSI application).]  The claim was denied initially [R. 56–59, 64–69] and on reconsideration by the Social Security Administration ("the Administration") [R. 60–63, 72–77].  On December 18, 2007, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 78–80], and on October 1, 2009, ALJ John Randolph Martin conducted a de novo hearing on Plaintiff's claims [R. 21–55].

The ALJ issued a decision on November 2, 2009, finding Plaintiff not disabled under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.  [R. 11–20.]  The ALJ found Plaintiff met the insured status requirements through December 31, 2009 [R. 13, Finding 1] and had not engaged in substantial gainful activity since October 29, 2006, Plaintiff's alleged onset of disability date [*id.*, Finding 2].  The ALJ found Plaintiff suffered from severe impairments of hypertension and insulin dependent diabetes mellitus with neuropathy and nonsevere impairments of cataracts status post surgery, high cholesterol, history of migraine headaches, and human immunodeficiency virus ("HIV").  [R. 13–14, Finding 3.]  However, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; the ALJ specifically considered Listings 4.00, 9.08 and 14.08.  [R. 14, Finding 4.]

Additionally, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following restrictions: occasional lifting and/or carrying a maximum of 50 pounds; frequent lifting and/or carrying of a maximum 25 pounds; standing, walking, and/or sitting about six hours in an eight-hour workday; and pushing and/or pulling with the same weight restrictions listed above for lifting and/or carrying.  [R. 14, Finding 5.]  Based on this RFC,

the ALJ found Plaintiff was capable of past relevant work as a security guard and a residence counselor, where he performed semi-skilled to skilled duties requiring light exertional demands. [R. 19, Finding 6.]

Plaintiff requested Appeals Council review of the ALJ's decision [R. 6–7], but the Council declined review [R. 1–5]. Plaintiff, proceeding pro se although he was represented before the ALJ [*see, e.g.*, R. 23], filed this action for judicial review on October 4, 2010 [Doc. 1].

## **THE PARTIES' POSITIONS**

Plaintiff filed a one-page brief in this action, stating he could not work because his impairments are not curable, will last more than one year, and have an effect on his stability and ability to sustain gainful employment. [Doc. 28.] Specifically, Plaintiff asserts the following:

> I been under medical care for my diabetes, blood pressure, cholesterol, and HIV for more than 7 or 8 years . . . .
>
> I have had surgery replacement of Lens on both of my eyes, because of the affect of diabetes and I do not have good vision without eyeglasses.
>
> My diabetes has also caused me to have had circumcision operation, which affect my ability to have a sexual relationship.
>
> I have neuropathy in both of my f[ee]t[] which affects my ability to wear shoes or socks or have satisfaction with normal walking.
>
> I am disagnos[ed] with HIV positive and under the medication Atripla which caus[es] unsuspecting bowel movement and mental anxiety for me.

[*Id.*] Plaintiff did not cite any specific objections to or any error in the ALJ's decision.

In response, the Commissioner construes Plaintiff's allegations as a challenge to the ALJ's RFC findings and contends the ALJ properly determined Plaintiff's RFC. [Doc. 38 at 7.] Specifically, the Commissioner contends

(1) Plaintiff's diabetes and diabetic neuropathy were effectively controlled when Plaintiff complied with treatment [*id.* at 8];

(2) Plaintiff's HIV was generally asymptomatic during the relevant time period and that there was no evidence Plaintiff was taking medication for HIV prior to the ALJ's decision [*id.* at 9];

(3) Plaintiff's blood pressure is a severe impairment warranting limiting Plaintiff to medium work, but Plaintiff has repeatedly failed to take his anti-hypertensive medications and has failed to point to any evidence that he required additional work-related limitations as a result of his high blood pressure [*id.*];

(4) the medical evidence shows surgery corrected Plaintiff's cataracts and that, with the use of glasses, Plaintiff has no visual limitations [*id.*]; and

(5) there is no evidence Plaintiff's complaints of sexual dysfunction and high cholesterol had any affect on his ability to engage in substantial gainful activity [*id.* at 10].

## STANDARD OF REVIEW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court

can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Court's Scope of Review in Social Security Actions**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th

Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court

must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g., Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of*

*Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step

five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the

national economy that the claimant can perform, considering the claimant's age, education,

and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can

find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§

404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A. *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant

physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for

pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an

individual has earnings from employment or self-employment above a specific level set out

in the regulations, he is generally presumed to be able to engage in substantial gainful

activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B. *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform

basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a

claimant's physical and mental impairments are sufficiently severe, the ALJ must consider

the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B),

1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not

in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889

F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of

impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.** *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.** *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind

---

[4]Residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20 C.F.R. §§ 404.1545(e), 416.945(a)(1).

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. §§ 404.1560(b), 416.960(b).

### E. *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a; 416.969a. A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. *Id.*

[Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130

(4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)).  If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence.  *Craig*, 76 F.3d at 590.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d), 416.927(d).  In any instance, a treating physician's opinion is generally entitled to more weight than a consulting

physician's opinion.  *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(e), 416.927(e).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108

(4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485;

17

*see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

As previously stated, Plaintiff filed a one-page brief in this action and did not cite any specific objections to or any error in the ALJ's decision.  Because Plaintiff is proceeding pro se, the Court is charged with liberally construing Plaintiff's brief to allow for the development of a potentially meritorious claim. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *see also Barnett*, 174 F.3d at 1133 (stating that the mandated liberal construction of pro se pleadings means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so).

Accordingly, the Court construes Plaintiff's brief as a challenge to the ALJ's RFC findings because the ALJ's RFC assessment allowed the ALJ to conclude Plaintiff could perform his past relevant work as a security guard and residence counselor and, therefore, was not disabled.

The Court reiterates that judicial review of a Social Security decision is narrowly tailored "to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir.2002). While the ALJ here found Plaintiff had severe impairments, this finding does not, by itself, mean Plaintiff is entitled to DIB or SSI; rather, in order to obtain benefits, the evidence must show Plaintiff's impairments are of a disabling severity. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir.1990) (stating a court's proper focus is not on a claimant's diagnosis but on the claimant's actual function limitations); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (stating the mere presence of impairments does not automatically entitle a claimant to disability benefits—the claimant must show functional loss related to his or her impairments).

**Medical Evidence of Record**

On October 15, 2006, Plaintiff went to the emergency room complaining he was dehydrated. [R. 215.] The ER doctor noted that, although Plaintiff was taking his insulin, he was not checking his blood sugar or taking his prescribed diabetes medication—he claimed the medication made him nauseous. [R. 215–16.] Plaintiff also reported he had lost approximately 50 pounds in the past few years and his lymph nodes were swollen; the doctor obtained Plaintiff's consent to test for HIV. [*Id.*] The discharge summary reflected

Plaintiff was diagnosed with hypoglycemia, dehydration, hypertension, and resolved leukopenia. [R. 202.] Plaintiff was advised to comply with treatment and follow up with his primary care physician for the HIV test results and adjustments to his diabetic and hypertensive medication. [R. 202–03.]

On November 9, 2006, Plaintiff presented to the ER complaining of weakness and epigastric discomfort with nauseousness for the past three days; Plaintiff was admitted to the medical intensive care unit ("MICU") and was advised the test from his October 2006 hospital visit showed he was HIV positive. [R. 223, 225.] The intake assessment indicated diabetic ketoacidosis thought to be precipitated by Plaintiff's noncompliance with diabetic treatment. [R. 224.] The final report from this hospitalization indicated Plaintiff's lungs were clear, heart size was normal, and bones were normal in appearance [R. 226], and Plaintiff was discharged in a stable condition and advised to follow up with his primary care physician [R. 229]. Notably, although Plaintiff's cholesterol was high, the doctor declined to place Plaintiff on a statin "[g]iven his questionable followup." [*Id.*]

On December 12, 2006, Plaintiff saw his primary care provider, Dr. Rhoe, at Richland Community Health Care Association ("RC-HCA"). [R. 234.] Plaintiff's dosage of Novolog insulin mix was increased. [*Id.*] Dr. Rhoe noted on December 13, 2006 he had picked up Plaintiff's labs from the HIV test conducted at the hospital and had retested Plaintiff on December 12; given the results, Dr. Rhoe questioned whether Plaintiff had a false positive test. [R. 235.] On December 18, 2006, Plaintiff was seen for a follow-up visit and stated he was doing well. [R. 232.] Levemir was added to his medications, and Plaintiff was advised when to take his insulin and check his blood sugar. [R. 233.]

On January 3, 2007, Plaintiff again presented to the ER.  [R. 256.]  He described feeling lightheaded when he was at the employment office, having only had a few candies to eat that day.  [*Id.*]  Plaintiff denied actual syncope, passing out, or any pain.  [*Id.*]  Plaintiff was given a small amount of insulin and something to eat.  [R. 258.]  Plaintiff apparently left the hospital before being formally discharged and did not receive discharge instructions.  [*Id.*]

On January 7, 2007, Plaintiff was again seen in the ER with an indication of possible high blood sugar.  [R. 267.]  Plaintiff indicated he had not eaten since early morning, and had not taken medication.  [*Id.*]  A urinalysis indicated a urinary tract infection, and Plaintiff was admitted to MICU.  [R. 269.]  The MICU doctor assessed diabetic ketoacidosis, most likely caused by Plaintiff's failure to take insulin for a few days.  [R. 271.]

In April 2007, the State Disability Determination Services sent Plaintiff to be evaluated by an ophthalmologist.  [R. 275–76.]  The doctor concluded Plaintiff required reading glasses but was otherwise fully functional visually.  [R. 279.]

In August 2007 Plaintiff went to the Free Medical Clinic, stating he was out of medications for the last couple of months.  [R. 378.]  Plaintiff claimed the medication Glucophage made him ill.  [*Id.*]  He also stated he took an insulin shot the previous day, after consuming lemonade, banana pudding, and juice.  [*Id.*]  Further, Plaintiff complained that he needed glasses.  [*Id.*]

In February 2008, Plaintiff presented to RC-HCA for blurry vision, and it was noted he was not compliant with blood pressure medications and his diabetes was uncontrolled.  [R. 335.]  In March 2008, Plaintiff was seen for complaints of neuropathy in his right foot.

[R. 334.] The doctor did not observe any specific neurological impairment in Plaintiff's lower extremities, but he prescribed the medication Neurontin. [*Id.*] The doctor also noted Plaintiff's diabetes was stable on medications. [*Id.*] Plaintiff began physical therapy for the neuropathy in his feet in April 2008. [R. 353.] At the beginning of therapy, he claimed decreased range of motion and constant foot pain of 10 out of 10. [*Id.*] However, in September 2008, the physical therapist completed an unplanned discharge summary, stating Plaintiff stopped attending physical therapy appointments in late May 2008. [R. 348.]

In February 2009, Plaintiff returned to RC-HCA, seeking erectile dysfunction medication. [R. 376.] The doctor noted Plaintiff was not compliant with medications for either high blood pressure or diabetes. [*Id.*; *see also* R. 372 (noting in December 2008 Plaintiff's noncompliance).] In May 2008, Plaintiff was diagnosed with cataracts [R. 352], and he later underwent operations to address this condition [R. 403–06, 415–16].

**Opinions of State Agency Consultants**

In April 2007, a physician employed by the State Disability Determination Services reviewed the evidence and gave opinions concerning Plaintiff's ability to work. [R. 287–94.] Lindsey Crumlin, M.D., noted the evidence of non-compliance; the evidence that treatment was effective when taken; and the lack of any focal neuromusclar deficits. [R. 288, 294.] Dr. Crumlin noted that Plaintiff was not being treated for his recent diagnosis of HIV.[6] [R. 288.] Dr. Crumlin concluded Plaintiff could occasionally lift 50 pounds; frequently lift 25 pounds; stand/walk for six hours out of an eight-hour day; sit for six hours out of an eight-

---

[6] There is no evidence of HIV treatment in the record that was before the ALJ.

hour day; and push/pull with the limits indicated for the amount Plaintiff could lift/carry.  [*Id.*]

Dr. Crumlin found no evidence of end organ damage from Plaintiff's diabetes and noted

Plaintiff responded well to treatment.  [*Id.*; R. 294.]  Dr. Crumlin concluded Plaintiff could

perform medium work.  [R. 294.]  Ellen Humphries, M.D., reviewed the evidence in August

2007 and reached the same conclusions as Dr. Crumlin.  [R. 307–15.]

Likewise, a Psychiatric Review Technique form was completed to determine the

state of Plaintiff's mental impairments [R. 315–27]; however, Lisa Klohn indicated on the

form there was insufficient evidence in the record to make a determination [R. 315].  Klohn

further indicated Plaintiff missed scheduled consultative examinations.  [R. 327.]

**Plaintiff's Hearing Testimony**

Plaintiff testified at the October 1, 2009 hearing before the ALJ.  [R. 21–55.]  Plaintiff

described his past work, explaining that he worked as a security guard at a juvenile

detention center, a dorm counselor, and a private security guard. [R. 26–29.]  Plaintiff also

reported working at Columbia Farms in 2006 and Stanley Steamer in 2007, but he was

unable to continue working with Stanley Steamer because of his diabetes.  [R. 29–31.]

Plaintiff said he experienced numbness and swelling from neuropathy in his feet, which

made it difficult to walk.  [R. 34–35.]  Plaintiff also testified he could not walk for more than

five to ten minutes without feeling faint.  [R. 36–37.]  Plaintiff testified the medication

Neurontin helped his neuropathic pain "[a]t first."  [R. 42.]  He was able to obtain this

medication and Cymbalta at a free clinic.  [*Id.*]  Plaintiff further testified physical therapy

had also helped his neuropathy.  [R. 43.]  With respect to his diabetes, Plaintiff testified

that he sometimes did not take his insulin because he could tell when he had too much insulin in him. [R. 48–49.]

When asked about his daily activities, Plaintiff stated he tried to rake the yard and sweep the floors, and he was able to take out the trash. [R. 38.] Plaintiff testified he could drive but should not because his neuropathy distracted him; he took the bus to the hearing. [R. 40.] Also, Plaintiff testified he could bathe, clothe, and cook for himself. [R. 40–41.] Plaintiff was asked about his history of cataract surgeries; he stated that, while he had to wear eyeglasses, he was able to read the Bible. [R. 47.]

**ALJ's RFC Analysis**

As previously stated, the ALJ concluded Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following restrictions: occasional lifting and/or carrying of a maximum of 50 pounds; frequent lifting and/or carrying of a maximum of 25 pounds; standing, walking, and/or sitting about six hours in an eight-hour workday; and pushing and/or pulling with the same weight restrictions listed above for lifting and/or carrying. [R. 14, Finding 5.] The ALJ stated his RFC assessment was

> supported by the record as a whole including the . . . medical evidence and the lack of treating source findings or objective medical evidence documenting or supporting significant work related functional limitations resulting from hypertension and insulin dependent diabetes mellitus with neuropathy that would preclude substantial gainful activity.

[R. 18.] Specifically, the ALJ noted Plaintiff's impairments were stable when he complied with medical orders and his medication, which weighed against Plaintiff's allegations of severity. [*Id.*] The ALJ concluded,

24

> In view of [Plaintiff's] underlying hypertension and insulin dependent diabetes mellitus with neuropathy, I find that he is unable to sustain the performance of heavy strenuous physical exertion but he is reasonably limited to medium exertion. [Plaintiff] has no other impairment or combination of impairments that, for any consecutive 12-month period, has restricted his ability to perform basic work-related activities at greater than a minimal or slight degree. Accordingly, he retains the ability to perform a wide range of medium work activities.

[R.19.]

**Analysis**

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

SSR 96-8p, 61 Fed. Reg. 34,474-01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. SSR 96-8p, 61 Fed. Reg. at 34,477; *see* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. *See* SSR 96-8p, 61 Fed. Reg. at 34,475. Only after this identification and assessment may the claimant's RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.* In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of a claimant's impairments, including those that are not severe. *Id.* at 34,477. While a non-severe impairment standing alone may not significantly limit a claimant's ability to do basic work activities, it may be crucial to the outcome of a claim when considered in combination with limitations or restrictions due to other impairments. *Id.* If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC . . . .

SSR 96-8p, 61 Fed. Reg. at 34,476. Importantly, the ALJ must explain how he arrived at his conclusions regarding the claimant's RFC. *Id.* at 34,478 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion,

citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Here, after evaluating the severity of Plaintiff's impairments and explaining the record evidence forming the basis of his opinion, the ALJ considered Plaintiff's statements concerning intensity, persistence, and limiting effects of Plaintiffs impairments. [R. 14–18.] The ALJ found Plaintiff's statements not credible based on Plaintiff's activities, including being able to walk to the corner store, which takes him 20 to 30 minutes; trying to rake the yard and sweep the floors; taking out the garbage; catching the bus to the hearing; feeding, bathing, and dressing himself; making meals or sandwiches; and reading the Bible. [R. 16.] The ALJ found these activities all suggest a capacity for attention and concentration without restriction or constriction due to pain. [*Id.*] Further, the ALJ noted there were no objective signs or clinical findings to support the degree of functional limitations in sitting, standing, and walking due to neuropathy and pain asserted by Plaintiff. [*Id.*] The Court finds the ALJ's decision both summarizes and discusses the medical records, objective medical evidence, and non-medical records and substantial evidence supports the ALJ's conclusions.

Moreover, the ALJ undoubtedly was also heavily influenced by Plaintiff's pattern of noncompliance with medical orders and prescribed medication. [R. 18.] The policy statement for SSR 82-59 provides,

> An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability.

27

1982 WL 31384, at *1 (1982); *see also Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1993) (considering the claimant's failure to follow treatment or take prescribed medications as a factor in assessing the claimant's credibility); 20 C.F.R. § 404.1530(a), (b) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work. . . . If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . ."). As noted by the ALJ, the majority of Plaintiff's documented hospitalizations were due to Plaintiff's noncompliance with medical orders and/or prescribed medication. Although Plaintiff stated he did not take his medications because he was on too much medication or felt like he had "too much insulin" in his body [R. 47–48], the record evidence supports the ALJ's conclusion that, when he was compliant, Plaintiff's impairments were stable [R. 18]. Based on the above, the Court finds the ALJ properly supported his findings regarding Plaintiff's credibility with record evidence and explanations and, therefore, substantial evidence supports the ALJ's decision to discount Plaintiff's subjective complaints because Plaintiff's condition was stable with proper medication and treatment.[7]

---

[7]The Appeals Council accepted two letters from Plaintiff and incorporated them into the record; one letter indicates that, as of November 16, 2009, he was on medication for HIV [R. 476], and the second letter lists his medications, explains the effects of his medications on his ability to work, and reiterates the presence of pain in his feet [R. 478–80]. Even considering this additional evidence that was not before the ALJ, the Court finds the ALJ's decision is supported by substantial evidence. While the Court notes the ALJ failed to discuss Plaintiff's claims regarding the side effects of his medication, this error is harmless. First, the record does not indicate that Plaintiff experienced side-effects from his medication. *See Brim v. Chater*, 74 F.3d 1230, 1996 WL 10288, *4 (4th Cir. 1996) (per curiam) (unpublished table decision) (holding any errors or omissions in the ALJ's decision regarding the side-effects of the claimant's medication did not sufficiently infect the decision to require remanding the case; it is the ALJ's responsibility to make credibility determinations, and the ALJ's decision was sufficient because the ALJ gave sufficient reasons, particularly daily activities, for refusing to fully credit all of the claimant's allegations) (citing *Hatcher v. Sec., HHS*, 898 F.2d 21, 23 (4th Cir.1989)). And, second, the record does not fully support the assumption that Plaintiff actually took his prescribed medications. Rather, as described above, the record is replete with Plaintiff's noncompliance with medical treatment. For these reasons, the Court finds the ALJ's failure to discuss side-effects of medications harmless error, and the ALJ's decision is supported by substantial evidence even with the addition of the evidence submitted to the Appeals Council.

As noted above, the responsibility for resolving conflicts in the evidence falls on the ALJ, not on the reviewing court. *Craig*, 76 F.3d at 589. The ALJ's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 520. Although Plaintiff may disagree with the ALJ's determination, the Court is constrained to affirm the ALJ's decision so long as substantial evidence of record supports that decision. *See Edwards*, 937 F.2d at 584 n.3 (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Because the Court finds substantial evidence supports the ALJ's assessment of Plaintiff's RFC, the Court recommends the denial of benefits be affirmed.[8]

---

[8] The Court likewise finds the ALJ's decision Plaintiff is capable of performing past relevant work as a security guard and residence counselor is supported by substantial evidence. The ALJ based this decision on a comparison of Plaintiff's RFC and the physical and mental demands of this work as performed in the national economy; the ALJ also considered the testimony of a vocational expert. [R. 19.] The ALJ confirmed vocational expert's testimony was consistent with the information contained in the DOT and that, to the extent it differed from the DOT, the vocational expert's testimony was based on his years of experience. [*Id.*] Consequently, the Court finds the ALJ's decision is supported by substantial evidence.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 22, 2012
Greenville, South Carolina