IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Charles Edward McClinton, ) | |
| ) | C/A No. 8:10-2577-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| Michael J. Astrue, Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

  This is an action brought pursuant to Section 205(g) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner").

## I. PROCEDURAL HISTORY

  Plaintiff Charles Edward McClinton alleges that he has been disabled since October 29, 2006, because of hypertension, insulin dependent diabetes mellitus with neuropathy, cataracts, high cholesterol, migraine headaches, and human immunodeficiency virus ("HIV"). Plaintiff filed an application for a period of disability and disability insurance benefits, as well as an application for supplemental security income, on November 13, 2006. His applications were denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on October 1, 2009. On November 2, 2009, the ALJ issued a decision that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. On September 21, 2010, the ALJ's decision became the "final decision" of the Commissioner after the Appeals Council determined that there was no basis for granting Plaintiff's request for review. Plaintiff thereafter brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the

"final decision" of the Commissioner.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Robert S. Carr, and reassigned to Magistrate Judge Jacquelyn D. Austin, for a Report and Recommendation. On February 22, 2012, the Magistrate Judge filed a Report and Recommendation in which she recommended that the Commissioner's decision to deny benefits be affirmed. Plaintiff filed objections to the Report and Recommendation on March 12, 2012, to which the Commissioner filed a reply on March 29, 2012.

This matter now is before the court for review of the Magistrate Judge's Report and Recommendation. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. *Id.* This court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.*

II. STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes

the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III.  DISCUSSION

A.   Factual Background

Plaintiff was fifty years old at the time of his claimed disability. He has past relevant work as a correctional officer, security guard, and counselor. Plaintiff has a master's degree in rehabilitation counseling. His relevant medical history is as follows.

Plaintiff presented to Palmetto Richland Emergency Room on January 31, 2006, complaining of fatigue. Plaintiff reported that he was out of Glucophage for his diabetes and was concerned his blood sugar was high. Plaintiff reported having a falling out with his doctor and was trying to set up being seen at Richland Primary Care. Plaintiff glucose level was 1033. Plaintiff received

insulin, was given a prescription for Glucophage 500, and told to follow up with a regular physician to help manage his diabetes. Tr. 185-87.

Plaintiff presented to the Palmetto Richland Memorial Hospital ("Palmetto Richland") Emergency Room on February 21, 2006 complaining of chest and back pain subsequent to a motor vehicle accident. Plaintiff's blood test showed a glucose level of 738. Plaintiff was given insulin and instructed to take his medicines and check his glucose, which he had not been doing compliantly. Plaintiff was instructed to follow up with his regular doctors at Richland Primary Care in one to two weeks. Tr. 188-89.

Dr. Ellison of the Richland Community Health Care Association, Inc. ("RCHCA") examined Plaintiff on March 11, 2006. He noted that Plaintiff was noncompliant with his medications. Plaintiff was given insulin in the office. Tr. 241.

Plaintiff presented to Dr. Rhoe of the RCHCA on June 9, 2006. Dr. Rhoe noted that Plaintiff had not been seen for three months when Plaintiff was given a prescription for insulin and a month's supply of Diovan for hypertension. Dr. Rhoe noted that Plaintiff's diabetes and hypertension were uncontrolled because of noncompliance. Tr. 240.

Plaintiff was examined at Palmetto Richland Emergency Room on July 6, 2006 complaining of fatigue, anorexia, nausea, and abdominal discomfort. Plaintiff's glucose level was 1036. Plaintiff was admitted to receive insulin over a 24 hour period. He was discharged in good condition with instructions to follow up with his primary care physician. Tr. 191-200.

Plaintiff was seen by Dr. Rhoe of RCHCA on July 10, 2006. Dr. Rhoe prescribed Novolin 70/30. Tr. 239.

Plaintiff presented to Dr. Rhoe at RCHCA on August 17, 2006. Dr. Rhoe noted uncontrolled

diabetes due to noncompliance. Plaintiff's blood sugar was too high to read. Tr. 238.

Plaintiff was seen by Dr. Rhoe on August 24, 2006 at RCHCA. Dr. Rhoe noted that Plaintiff's diabetes was uncontrolled but improved. Plaintiff was prescribed Glucophage. Tr. 237.

Plaintiff was seen by Dr. Rhoe at RCHCA on September 29, 2006. Plaintiff stated that he only took one-half pill of Glucophage because he felt bad when he took the entire pill, and he did not feel bad when his blood sugar was high. Dr. Rhoe discussed the importance of compliance with Plaintiff. Tr. 236.

Plaintiff presented to Palmetto Richland Emergency Room on October 15, 2006, complaining of dehydration. His blood glucose level was 646. Plaintiff reported that he had stopped taking Glucophage because it made him nauseous. Plaintiff was admitted for rehydration and correction of hypoglycemia. He was restarted on his home insulin regimen of insulin 70/30 forty units in the morning and 40 units in the evening. Plaintiff was started on glipizide 5 mg daily, and lisinopril 10 mg daily for elevated blood pressure. A human immunodeficiency virus (HIV) test was done based on Plaintiff's reporting a history of unprotected sex. Plaintiff reported that he did not check his blood sugar at home and stopped taking the Glucophage that was added by his primary care physician. Plaintiff was discharged as medically stable and instructed to follow up with his primary care physician. Plaintiff was told to check his fingersticks regularly at home. Tr. 202-19.

Plaintiff again present to Palmetto Richland on November 9, 2006, complaining of weakness with nausea. He received insulin and admitted to the intensive care unit. It was noted that Plaintiff was HIV positive. Plaintiff was assessed with diabetic ketoacidosis, most likely reason being his not being compliant with diabetes treatment. Plaintiff was discharged on November 11, 2006, and instructed to check blood sugars before meals and at night. He was instructed to contact his doctor

if his blood sugars were less than 60 or greater than 350, and to follow up with his primary care physician within one to two weeks. Tr. 220-29.

Plaintiff presented to RCHCA on December 12, 2006, by his primary care physician, Dr. Rhoe. Dr. Rhoe noted that Plaintiff had a history of diabetes that was uncontrolled because of a history of major noncompliance. Plaintiff's dosage of Novolog Insulin mix was increased. Tr. 234.

Plaintiff was seen at RCHCA on December 18, 2006. He was prescribed Levemir and instructed to check his blood sugar two hours after eating breakfast and two hours and eating dinner. Tr. 232-33.

Plaintiff was examined at the Palmetto Richland Emergency Room on January 3, 2007, complaining of feeling lightheaded at work. Plaintiff had not eaten except for a few candies. The differential diagnosis included hyperglycemia or hypoglycemia or other electrolyte abnormalities. Plaintiff received fluids, a small amount of fluids, and something to eat. Plaintiff left before receiving discharge instructions. Tr. 257-66.

Plaintiff was admitted to Palmetto Richland on January 7, 2007 after his family called EMS. Plaintiff's family noticed decreased activity over the prior few days. Plaintiff reported that he typically takes 10 units of Levemir every night, but that he had not yet taken it that day. Plaintiff also reported decreased appetite and drinking one to two alcoholic beverages a day. Plaintiff was given a diabetic diet and started on an insulin drip. Clinical impressions were diabetic ketoacidosis, acute cystitis, human immunodeficiency virus, hypertension, medical noncompliance. Plaintiff was admitted to the intensive care unit. It was noted that the most likely precipitating event was Plaintiff's not taking his insulin for a few days. Tr. 267-73. Plaintiff received an insulin drip and eventually insulin subcutaneously as his sugars trended down. It was noted that Plaintiff was

noncompliant on HIV treatment. Plaintiff was counseled to avoid sweet drinks, to eat regular meals, and to take his insulin. Plaintiff's blood sugars were within normal range when he was discharged. Tr. 300-01.

Lindsey Crumlin, M.D. prepared a Physical Residual Functional Capacity Assessment on Plaintiff on April 6, 2007. She determined that Plaintiff could occasionally lift fifty pounds; frequently lift twenty-five pounds; stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday; sit with normal breaks for a total of about six hours in an eight-hour workday; push and/or pull, including operation of hand and/or foot controls, in an unlimited amount. Dr. Crumlin noted that Plaintiff's vision is 20/20; he has a history of noncompliance with treatment so diabetes is sub-optimally controlled; he has been diagnosed with HIV but no treatment at that time; and there was no evidence of end organ damage from diabetes, that Plaintiff responds well to treatment. Dr. Crumlin noted that Plaintiff is credible to extent of the residual functional capacity. Dr. Crumlin noted no limitations. Tr. 287-96.

Plaintiff presented to the Palmetto Richland Emergency Room on May 2, 2007, complaining of an infection. He was assessed with balanitis; however, it was noted that Plaintiff's glucose level was over 500. Plaintiff received insulin. Tr. 297-98, 302-03.

Plaintiff again presented to Palmetto Richland Emergency Room on May 21, 2007, complaining of continued problems with balanitis. It was noted that Plaintiff appeared to have phimosis and probably needed a circumcision. Plaintiff's glucose level was 432. Plaintiff was given regular insulin by IV and had normal vital signs at the time of discharge. He was instructed to follow up with his local doctor for his diabetic control, and to follow up with Ryan White Clinic for his HIV since he was not taking any medications for that, nor had he ever. He was counseled to

continue taking his insulin, watching his diet, and drinking plenty of fluids. He also was given the number of a urologist to call for an appointment for consideration of a circumcision.

A Physical Residual Functional Capacity Assessment was prepared by Ellen Humphries, M.D. on August 23, 2007. She determined that Plaintiff could occasionally lift fifty pounds; frequently lift twenty-five pounds; stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday; sit with normal breaks for a total of about six hours in an eight-hour workday; push and/or pull, including operation of hand and/or foot controls, in an unlimited amount. It was noted that Plaintiff has poorly controlled diabetes and poor compliance; that he has not been on medications for HIV; that his hypertension is well controlled, and that he was treated for a history of phimosis. No limitations were noted. Tr. 307-14.

Plaintiff was seen at The Free Medical Clinic, Inc. (the "Free Clinic") on August 14, 2007. He reported that he had been out of medications for a couple of months and that Glucophage made him ill. He reported having an insulin shot the day previously. He also reported having had lemonade, banana pudding, and juice. Tr. 378.

Plaintiff presented to the Free Clinic on November 6, 2007, complaining of Balanitis. He was prescribed Diflucan. Tr. 380.

Plaintiff presented to the Free Clinic on January 1, 2008, complaining of leg pain among other issues. Plaintiff was prescribed Neurontin. Tr. 368.

Plaintiff was seen at the Free Clinic on February 6, 2008, complaining of burning pain in his foot. Plaintiff reported that Neurontin was not helping. He stated that he had been compliant with insulin but not his diet. Plaintiff was stated on Metformin. Tr. 362.

On February 15, 2008, Plaintiff was seen at RCHCA complaining of blurry vision,

headaches, and eye pain. He reported that he was not compliant with blood pressure medicine but that he had insulin. It was noted that Plaintiff's hypertension and diabetes were uncontrolled. Tr. 436.

Plaintiff presented to the Free Clinic on February 20, 2008, complaining of foot pain. Plaintiff reported that Neurontin was not helping even though he was on the maximum dose. Plaintiff was prescribed Cymbalta. Tr. 359.

On February 25, 2008, Plaintiff was seen at The Midlands Care Consortium ("MCC Clinic") where he was counseled regarding his HIV disease and informed he needed to be monitored at least every three months to see how his CD4 count progresses. TR. 419-20.

Plaintiff was seen at Rehabilitation and Geriatric Specialists, LLC on March 10, 2008, complaining of pain and weakness. An abnormal electromagnetic study showed neuropathy consistent with diabetes. Tr. 356.

Plaintiff was examined at the Free Clinic on March 17, 2008, complaining of constant, stabbing pain in his right foot. It was noted that Plaintiff did not maintain good blood sugar control. Tr. 355.

On March 27, 2008, Plaintiff presented at the Free Clinic. He was diagnosed with diabetic neuropathy. Tr. 351. He was referred to Palmetto Richland.

Plaintiff underwent a physical therapy evaluation at Palmetto Richland on April 3, 2008. Plaintiff reported constant foot pain and decreased range of motion. Plaintiff was given ankle range of motion exercises and stretches. Tr. 353-54. He was treated on April 7, 2008; April 10, 2008; April 15, 2008; April 17, 2008; April 22, 2008; April 24, 2008; April 28, 2008; April 30, 2008; May 9, 2008; May 12, 2008; May 16, 2008; and May 21, 2008 with varying success. He did not return

for further therapy. Tr. 438, 473-75.

Plaintiff was referred to Philip Flynn, DO for a consultation. Plaintiff was examined on May 6, 2008, and referred for a cataract evaluation. Tr. 444.

On October 2, 2008, Plaintiff was seen at the Free Clinic. He requested a refill for his medications and diabetic shoes. Tr. 442.

Plaintiff was examined at RCHCA on December 16, 2008. Plaintiff was continued on insulin. It was noted that Plaintiff's diabetes and hypertension were uncontrolled because of Plaintiff's noncompliance. Plaintiff was continued on insulin. Tr. 371-72.

Plaintiff was seen at RCHCA on February 10, 2009. It was noted that Plaintiff was not compliant with his blood pressure medications and insulin. An assessment revealed uncontrolled diabetes with noncompliance, uncontrolled hypertension with noncompliance, and stable HIV. It was also noted that Plaintiff was experiencing blurred vision from cataracts. Tr 376.

On March 18, 2009, Plaintiff presented to Palmetto Richland for cataract surgery on his right eye. Tr. 415-16.

Plaintiff was treated at the Free Clinic on May 20, 2009. He reported that he did not watch his diet at all. He was prescribed Glucotrol. Tr. 383.

Plaintiff was seen at the Free Clinic on June 11, 2009 for a severe toothache. Plaintiff reported that he has not been compliant with blood pressure medications or insulin. It was noted that Plaintiff might need to be evaluated by a psychologist because of his noncompliance. Tr. 427-28.

Plaintiff was examined at RCHCA on June 12, 2009 for a toothache. He reported that he was asked at the Free clinic to increase his insulin but he refused because he thinks more insulin will harm him. Tr. 425-26.

On July 1, 2009, Plaintiff presented to Palmetto Richland for cataract surgery on his left eye. It was noted that Plaintiff is HIV positive but not on therapy. Tr. 403-06.

It appears that as of October 10, 2009, Plaintiff was taking the following medications: Neurontin, Glucotrol, Metformin, Crestor, Atacand, Humulin. Tr. 482. On November 19, 2009, Plaintiff advised the Appeals Council that his CD4 count had dropped to a level that required his being prescribed Atripla for his HIV disease. Tr. 476.

B.     The ALJ Hearing Testimony

Plaintiff testified that he was fifty-three years old at the time of the hearing. He stated that he had a master's degree in rehabilitation counseling but had not used that training in a specific job other than some volunteer work. Tr. 25-26. Plaintiff testified that he had been employed as a security guard, residence counselor at South Carolina State University, and security guard. Plaintiff testified that he had attempted to work for Stanley Steemer but could not perform the job. Plaintiff stated that he had no strength and that he paid a price for not having his diabetes under control. He also testified that he had high blood pressure, high cholesterol, and HIV. Tr. 32. According to Plaintiff, he had been taking Humidor (insulin injections) since he was diagnosed with diabetes in approximately 2004. He also takes Metformin and Glucotrol for diabetes. Tr. 33. Plaintiff testified that he has severe fatigue, and that the neuropathy distracts him and causes numbness in his foot. Plaintiff testified that he could not walk, but had to glide. Tr. 34. Plaintiff stated that he could only take a few steps before feeling weak and lightheaded. Tr. 35. Plaintiff testified that he could walk or stand for five or ten minutes. Tr. 36. Plaintiff indicated that he had no trouble sitting, but that he gets exhausted lifting things. Tr. 37.

Plaintiff testified that on a regular basis he tries to rake the yard and sweep the floor and that

he takes the garbage out to the trash can. Tr. 38. Plaintiff stated that his main problem is that he has no stamina. Plaintiff stated that he drives but that the neuropathy distracts him. Plaintiff testified that he is able to feed himself, bathe, dress, a fix a meal. Plaintiff testified that he lives with his wife and two adult children. Tr. 40-41.

According to Plaintiff, the numbness in his right foot does not go away. Tr. 42. Plaintiff testified that he felt that Neurontin causes his hands to lock up and makes hm sleepy. Plaintiff reported good results from physical therapy for his neuropathy and that the therapy provided him with the opportunity to learn how to increase his circulation. Tr. 43. According to Plaintiff, he feels weak and fatigued from too much diabetes medication. Tr. 44. Plaintiff also testified that the Free Clinic and Regional Primary Care monitor his CD4 cell count. Tr. 46-47. Plaintiff reported that he experienced good results with the cataract surgery and that he read the Bible. Tr. 47.

Joel Leonard testified as a Vocational Expert. Mr. Leonard testified that Plaintiff was not precluded from his past relevant work as residence counselor or security guard, but that Plaintiff would be excluded from work as a corrections officer. Tr. 53-54. Mr. Leonard further testified that if Plaintiff's claims were considered to be fully credible, Plaintiff could not perform any past relevant work or any other job because of a catastrophic level of dysfunction in terms of energy, fatigue, and walking more than short distances. Tr. 54.

C.     The ALJ's Decision

The ALJ determined that Plaintiff had the severe impairments of hypertension and insulin dependent diabetes mellitus with neuropathy (20 C.F.R. § 404.1520(c) and 416.920(c)). Tr. 13. The ALJ further noted a history of nonsevere impairments: cataracts status post surgery, high cholesterol, history of migraine headaches, and HIV. The ALJ also determined that Plaintiff does not have an

impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I, specifically any Cardiovascular System Section 4.00 Listing; significant disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station, or acidosis occurring at least on the average of once every two months, as required by Listing 9.08; or repeated manifestations of HIV infection resulting in significant, documented symptoms, or other such infections resistant to treatment or requiring hospitalization, as required by Listing 14.08. The ALJ found that Plaintiff has the residual functional capacity to perform medium work with the following restrictions: occasionally lifting and/or carrying a maximum of fifty pounds; frequently lifting and/or carrying a maximum of twenty-five pounds; standing, walking, and/or sitting about six hours in an eight-hour workday; and pushing and/or pulling with the same pound restrictions listed above for lifting and/or carrying. Tr. 14.

In considering Plaintiff's credibility, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were not consistent with the ALJ's residual functional capacity assessment. The ALJ noted that the activities reported by Plaintiff suggested a capacity for attention and concentration without restriction or concentration due to pain. The ALJ further found that the medical evidence of record does not reveal objective signs or clinical findings to support the degree of functional limitations in sitting, standing, and walking due to neuropathy and pain as asserted by Plaintiff.

The ALJ accorded great weight to the opinions of the State Agency medical consultants, Drs.

Crumlin and Humphries, that Plaintiff retains the residual functional capacity to perform medium work. The ALJ also noted that Plaintiff had exhibited a repeated pattern of noncompliance with medical orders and prescribed medication. According to the ALJ, a majority of Plaintiff's documented hospitalizations were, at least in part, due to noncompliance as reported by the admitting and/or treating physicians. The ALJ further observed that Plaintiff's impairments were stable when noncompliance was not noted. The ALJ determined that evidence of impairment stability with medical compliance weighs against Plaintiff's allegations of severity. Tr. 18.

The ALJ found that Plaintiff is capable of performing past relevant work as a security guard and a residence counselor, in which he performed semi-skilled to skilled duties requiring light exertional demands. Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from October 29, 2006 through the date of the decision.

D.     The Report and Recommendation

Plaintiff filed a one-page brief in which he asserted the following:

I been under medical care for my diabetes, blood pressure, cholesterol, and HIV for more than 7 or 8 years . . . .

I have had surgery replacement of Lens on both of my eyes, because of the affect of diabetes and I do not have good vision without eyeglasses.

My diabetes has also caused me to have had circumcision operation, which affect my ability to have a sexual relationship.

I have neuropathy in both of my f[ee]t[] which affects my ability to wear shoes or socks or have satisfaction with normal walking.

I am disagnos[ed] with HIV positive and under the medication Atripla which caus[es] unsuspecting bowel movement and mental anxiety for me.

ECF No. 28.

The Magistrate Judge thoroughly reviewed the record and found that the ALJ's decision both summarized and discussed the medical records, objective medical evidence, and nonmedical evidence. The Magistrate Judge also observed that the ALJ was heavily influenced by Plaintiff's pattern of noncompliance with medical orders and prescribed medications. The Magistrate Judge pointed to SSR 82-59 in support of the ALJ's determination. SSR 82-59 provides, in relevant part:

> An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such "failure" be found to be under a disability.

The Magistrate Judge concluded that the ALJ properly supported his findings regarding Plaintiff's credibility with record evidence and explanations, and that substantial evidence supported the ALJ's decision to discount Plaintiff's subjective complaints because Plaintiff's condition was stable with proper medication and treatment.

E.      Plaintiff's Objections to the Report and Recommendation

Plaintiff's objections are as follows:

- These conditions are life long and will persist for 23 months and more. There is no cure for them and they do affect my overall ability and stability to perform gainful employment and to continue with it.

- There is no medical evidence that [I] had not been taking my medications, no laboratory finding that these "Doctors" can verify using scientific methods, like blood tests, because they do test me.

- There has never been a time that, I have not taken my medications when I had them in my possession. There are times when my medication has not been ordered or a program has been stopped. Like right at this moment, I do not have my neurontin or azor for blood pressure, due to my counselor at Richland Primary Care have neglected to send in prescription to pharmacy at Welvista.

- These "Doctors" that you all keep referring to I do not know them. They are on record just for the purpose of writing a report. Dr. Lindsey Crumlin

- I have a combinations of medical problems that will not allow me to function properly in work environment – medium or gainful employment. I can not carry or lift 50lbs or less, or sit six hours out of eight without difficulties of some sort, arguing, fighting, and stress.

- What the medical records can show is the number of times that I have been admitted to the hospital or clinics that shows that under there treatment for days or week that their "Doctors" were not able to bring my condition within the range of projection to be under control before the law say they are to relief me from care.

- The record will show that without medical insurance, these doctors will give a patient any kind of medicine that is available to their disposal, despite the consequence to the patient. It is the patient responsibility to tell the doctors what effect that the medicine is having on their health or physical function.

- HIV symptoms gotten plaintiff itching, stretching, defecating and sick on a regular basis.

- Diabetes still high - AIC high, feet cold and tingling, can not wear shoes or socks for long due to nerves in feet. (Could be Osteoarthritis)

- Diabetes Mellitus has caused plaintiff to be circumcised and not recover functionality which causes stress and mental anxiety. This is a function of daily living activity (S.C. Neurological Association – (Dr. Greenberg-9 Richland Medical Park, Suite 200).

ECF No. 42.

Plaintiff essentially restates the allegations of his complaint and brief and contends that the Magistrate Judge committed legal errors. The district court need not conduct a de novo review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982). Nevertheless, the court has thoroughly examined the record. Plaintiff's objections are without merit.

IV.  CONCLUSION

The court adopts the Report and Recommendation and incorporates it herein by reference. For the reasons stated herein and in the Report and Recommendation, the decision of the Commissioner is **affirmed**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Chief United States District Court

March 29, 2012

Columbia, South Carolina